Good morning, Your Honors. May it please the Court, my name is Christina L. Powers, and I am appearing on behalf of the petitioner Mr. Chavarria, so that was absolutely correct. Mr. Chavarria is a Mexican national who is seeking relief under the Convention Against Torture. That is the only form of relief at issue. The basis for his claim is his many mental illnesses, which include chronic post-traumatic stress disorder, major neurocognitive disorder due to brain injury, recurrent moderate major depression, and others specifies schizophrenia, spectrum, and psychotic disorder. These mental illnesses have caused him to act out. He has had multiple disciplinary incidents while in immigration detention. He also, and I need to be careful here because we are not going to concede that Mr. Chavarria's account of his drug activities is not true, but it is the case that at the hearing in front of the immigration judge, he did not testify, and his counsel at the time stated that his testimony is not necessarily reliable. Counsel, I have a question for you. Of course. And that is, your theory is that your client reasonably fears that he would be tortured if he's returned to Mexico, and what is the reason or reasons in your argument as to why you think that would occur? Sure. The issue is that we are arguing that because Mr. Chavarria's mental illnesses caused him to display erratic behavior, as shown by the medical records submitted by both the department and his counsel in front of the immigration judge, as well as his very persistent belief that he is being persecuted for being part of a drug trafficking cartel, being placed fairly high up in that cartel. And based on his belief in that, he is going to react in unpredictable ways with law enforcement and perhaps encounter cartel members, and so we're actually... Can I interrupt you just a second? What I'm trying to determine is whether your claim is that his mental illness, with all of its many manifestations, is the reason, or whether you're also claiming that his involvement or alleged involvement with cartels is separately a reason, or is it all bound up in the mental illness claim? It's all bound up in the mental illness claim, Your Honor. We are not arguing that because of the reliability issue, we're not arguing an independent claim based on the drug trafficking, although there is a... We told you to be prepared to discuss this Velazquez-Samoa case. So I think you just argued against what I thought you had argued in your brief, which would have been a Velazquez-type argument. Now you're saying it's really just one cause? I think what I understood how the Velazquez argument applied to our case is that there are multiple sources for the torture, even if it's all due to the behavior of the mental illness. So you're saying that he could be tortured by the cartel, or he could be tortured by the government, or he could be tortured by someone in a mental institution, but it all stems from his mental illness? That is correct. And so your argument is that the agents, or part of your argument is that the agency... I understood your argument to be that the agency didn't appreciate that there are sort of different people who could torture him, and we have to look at the sort of aggregate risk of torture from all those sources. Is that basically what you're saying? Yes, Your Honor. Okay. And so my question is, where did that error occur? Do you think that the immigration judge was wrong in failing to aggregate the different risks of torture? Or did the error only appear when the case got to the board? I believe the error appeared at the immigration judge level. Her factual findings were confined to the institutionalization theory. Except the BIA's discussion at AR4 says the immigration judge properly considered the respondent's mental health diagnosis and his fears about what will happen to him if he returns to Mexico, including the harm he believes he will experience from drug traffickers and police. So it seems like, you know, you obviously disagree with their outcome, but I have a hard time seeing that the BIA didn't consider that claim. Yes. The way I read that is that they are dismissing... I think the confusion is that the BIA is reading this as two distinct claims when, again, it's one ground with multifaceted potential agents of torture. But they still said... I mean, and this is, I think, from a passage on the prior page, he claims that he will be tortured in Mexico in a mental institution by drug traffickers or by the police. So whether that's all for one underlying reason or for different reasons, that seems to be an explicit recognition that there are different people who could torture him. So what would you point to in the board's decision that suggests that they failed to appreciate that there were different possible sources of torture? I think that this is a situation where we have to look at whether that statement by itself is sufficient, given the complexity of the claim and the facts of the case, to kind of function as a sufficient recognition that the board did consider all these possible situations presented by the petitioner at the immigration judge level. Well, so if the... I mean, to go back to your answer to my earlier question, if the genesis of the error was the immigration judge's failure to appreciate the theory of torture, did you exhaust your claim by... Because I looked at your brief to the board and I didn't see where you said the IJ didn't understand the theory of torture. I would point to... Let me see, I have the citation to the record, the brief. It is a rather general statement, but that the judge mischaracterized the evidence. I believe that statement is in the brief. I apologize. I am having trouble finding the citation. I believe it is at AR 22. Specifically, we'll face torture because Mexican laws and society discriminate. Did you say page 22? Yes. Actually, and I apologize, that was a misstatement. I think that page 20 lays out about the fifth line down, specifically the record demonstrates, or under summary of argument, evidence show that Mexican society and law discriminate against the mentally disabled like him. And then on page 21... No, go back to page 22. I admit this is... And then on 24 it discusses general police involvement. It is a close decision, but I do think that this brief is in compliance with Ninth Circuit doctrine on exhaustion. And I think that... I realize the problem I'm about to set for myself, but the BIA did acknowledge that the police and gang issues were addressed. And so I see how that could create an issue whether or not they fully addressed it because either we exhausted and that shows it, but then that means they considered it, or we didn't and they brought it up affirmatively. I thought your argument was about the BIA on page 3 of its opinion talking about JFF as if all of the causes or sources here were one chain of causation. I thought that was the argument you were making now anyway, and I'm not sure the IJ made that same error. I don't think the IJ cited JFF, but I might have missed it. I believe... Let me see the... No, I don't know if the IJ cited JFF or at least not more than a passing reference. Well, so that may be, but I understood that the reference to JFF and to the chain of events is specifically about institutionalization, right? Because that is a chain of events, like somebody would have to notice him, then he'd have to be institutionalized, and then while institutionalized, he'd have to be tortured. That doesn't mean that they thought that torture by the police or by cartels were part of the same chain. At any rate, they didn't say that that's how they were understanding those theories, right? Yes, that is an accurate summation. Yes, they analyzed the institutionalization chain, but not the other chains presented. Well, the same sentence says, or that he would be harmed by drug traffickers or police officers, so I'm not sure why you're saying that. It's institutional, or he would be harmed by drug traffickers or police officers, and not every step of the chain is more likely than not, right? I think we should probably move to the government's argument, because we've taken you over your time. Let's hear from the government. We'll still give you two minutes for rebuttal. Good morning, Your Honors. Can you hear me? Yes. May it please the Court, Andrew Nsinga on behalf of the Attorney General. As Petitioner concedes, now this claim is bound up in similar factual scenarios. If that's the claim that she's presenting, then the Velasquez-Samayoa analysis is not particularly on point, because now we are essentially talking not about independent claims. Well, in it, I guess the other question I have, AR-74, this is the immigration judge's decision. There's sort of a, right before the conclusion, the judge says the court is not convinced that the suppositions undergirding respondents fear either individually or collectively meet the clear, I can't say this, clear probability standard. So, does that meet the requirements of our new case anyway, by saying that they've been considered collectively? Yes, Your Honor. I think the pages to focus on in terms of the concerns about whether or not the immigration judge somehow misunderstood a pretty obvious claim is pages 73 and 74. At the bottom of 73, the immigration judge specifically lists out, first, there's a claim about respondents asserts that he cooperated with the cartels, et cetera, et cetera, and then second, he asserts mental illness would bring him to the attention of authorities, et cetera, et cetera. And then the immigration judge runs through and then concludes, well, even the census before what Your Honor mentioned, immigration judge says he has not demonstrated sufficient likelihood of any one link in the hypothetical chain of events, much less likely the entire chain of events. And then, as Your Honor points out, the immigration judge specifically considered the claims individually and collectively. That really seems to me the key, because if they were only considered individually, it seems like our new case requires that they all be sort of put together, not just looked at individually. But it seems to me that I.J. at least did so. Well, there's always going to be a degree of complexity of how a petitioner chooses to litigate his or her claim. Unfortunately, a petitioner before the agency chose to sort of split it out, and now is saying it's more bound up. Whatever is true, the agency's in there simply because petitioner can't decide how he wants to proceed with his claim. So the collective concept is adequate if we are talking about Velazquez-Semajor. But whether the analysis is adequate under Velazquez-Semajor is going to really rely on the complexity of what petitioner is claiming, whether they are independent, and how that sort of analysis, as the government believes it should be, where holistic analysis should proceed. But again, whatever petitioner is now arguing, the immigration judge understood there to be the potential of harm from two sources. Now, petitioner kind of wants to back away from claiming that the one was unreliable, but that's petitioner's concession to the agency. Petitioner can't walk away from his own concession to the agency. I'm sorry, could you just explain again what you're making of the concession again? Could you just explain what you're saying about that? Well, petitioner conceded that, before the immigration judge, that to the extent there are these two claims, and whether they're bound up or independent, we'll set that aside for a second. But essentially he said that the claims about him having been involved in a cartel are unreliable. Now, frankly, we just don't know. We don't know. But under PARADA, under the statute, under the regulations, petitioner bears the burden of proof. If all that petitioner is now arguing to the court is, I don't know, that's not adequate for the record to compel reversals of the agency's reasonable fact findings. So, I don't know does not answer the question before the court. So, if though, whether or not the petitioner was really in a drug cartel or really selling drugs, if the petitioner is going to be out on the street saying, I used to be a drug lord, isn't it possible that petitioner, I mean, I thought the theory was that would cause cartel members or the police to torture petitioner, regardless of whether what petitioner was saying was true. Is that one of the sources of torture here? You'd have to ask petitioner what the theory of their own case is, Your Honor. There's no claim that he was a drug lord. We know he was a drug dealer. That's what we know. Okay, so drug dealer. If he's going to be out on the street saying that and, I mean, making claims about his involvement with the police or as an informant or whatever about drugs, if he's going to be saying things like this because of his mental illness, then I thought one of the theories was that he would be tortured by the police or a cartel. And the immigration judge and the board understood it to be these dual source type claims. And that's fine. But understanding is one thing, and which agency did. But then where is any evidence in this record? Because what petitioner didn't discuss for one moment is record evidence that would compel the conclusion that anyone is going around torturing mentally ill people who are on the street saying unusual things or incorrect things. Point us to an evidentiary record that compels that conclusion and would compel any reasonable fact finder to say yes. I didn't understand. I mean, maybe I guess I wouldn't have thought that we would potentially say this person definitely has more than a 50% risk of torture. But it seems possible that we should ask the agency to consider whether the aggregate risk of torture is over 50% and let the agency make that determination, looking at the different sources of torture here, one of which is cartels and one of which is torture in an institution. The agency did that. The agency considered it individually or collectively. And can you point to how we know that for sure, that it was both things were done? Because on page 73 of the record, the immigration judge specifically lists both claims and then runs through the case and concludes individually or collectively, you haven't met the burden of proof to show the overall likelihood of torture. And that overarching question, that is the question. That's why we ever talk about aggregation anyways, because really the question we want to get at is likelihood, clear probability of torture. That's the question. The immigration judge answered that question. And again, petitioner doesn't point to a single bit of evidence that compels reversal of that determination. And what is what's the relevance of the the immigration judge's statement when the board wrote its own opinion? Do we do we look to look at what are we looking at? Are we just reviewing the board or I mean, you're asking us to consider what the IJ said. So how do we do that? Well, in this situation, both your honor, the board is affirming the immigration judge's factual findings. And that is part of what petitioner is complaining about. So whether or not the immigration judge's factual findings are or are not wrong, of course, requires to look at the immigration judge's decisions. The board, of course, is affirming it. And that is part of where the concern about exhaustion, that a petitioner somehow wanted to change the claim and simply asserting the agency mischaracterized evidence. That's not going to put the agency on notice under Bebe, because anyone can say you mischaracterized evidence. What we need is no, what I really meant to claim was this is all one claim. Now, if it's one claim, then the immigration judge analyzes it. If it's two claims, the immigration judge analyzes it in a more than adequate under Alaska Assembly, your honor. So I misspoke earlier when I thought that the IJ hadn't cited JFF because IJ did. And the IJ does say this thing. Respondent cannot meet his burden based on an inclusive record or by stringing together a series of suppositions. And he has not shown that each step in the hypothetical chain of events is more likely than not to occur. That says the hypothetical chain of events, as if there's only one chain of events here. And I think that's a correct statement of law, your honor, though, which you have to look at page 74 of the immigration judge's actual analysis. He says or she says that he has not demonstrated sufficiently of any one link. Any link means that you cannot under any probabilistic analysis through an intersection or union of analysis. You cannot reach a more likely than not conclusion. But if there are two chains and they each lead to a 40 percent chance of torture, I know you're going to say there's nowhere close to that level. But just say there are two chains. Maybe they're each 30 percent chance, whatever that amount is. If you have to add the chains together, you could get above 50 percent, even if neither chain itself isn't above 50 percent. So I'm not sure how we can tell that the IJ did the right analysis. Because the immigration judge conducted the holistic analysis. Now, the difficulty is your honor's question brings in quantitative things that do not are not required of regulations. And again, it bears emphasis, you do not add together likelihoods. You calculate the complex of intersections and unions, which includes multiplication to get the outcomes. And then you add the unions of the outcomes. So it bears emphasis, again, that the government does not think that a mathematical analysis should ever be done because it's essentially not required and would likely be impossible. But if we're going to talk about probabilistic outcomes, then we need to be clear about the complex relationship between calculating the probability of the intersections of dependent events, related events, and then adding the outcomes that would be torture. Because I agree, your honor, part of what the difficulty is that if you were going to do the analysis, it is possible to have two likelihoods that are around 50 percent be aggregated. But when the immigration judge says he has not demonstrated a sufficient likelihood of any link and then considers them individually and collectively, that's all that's required under the regulations. So unless your honor has any further questions, we simply ask that the court deny the petition for review. Thank you. Thank you. We'll give you two minutes for rebuttal. Oh, you're on mute. Thank you. Apologies. I would like to point to the immigration judge's decision on page 74, particularly the sentence, his claim rests on his account of past events, which the parties stipulate is unreliable. And I think that is a revealing sentence because, again, when I say that this claim is a mental illness claim, what I guess what I'm saying is, like, we, you know, we don't know, but he will act and has acted and continues to act as if he is, you know, met high-powered cartel members, was an informant for both Interpol and the FBI. And so he behaves accordingly. So while the root of that may be his mental illness, it is that behavior that we're arguing puts him at risk and makes it that he's just not suffering from the potential torture of the institutionalization chain, but also involvement from either police or current cartel members. So I think that is a revealing sentence, and I apologize for perhaps mischaracterizing the claim in, you know, when I say it is mental health, I do that in order to note that, you know, that may be the source of the drug trafficking issues, despite, although there is also the conviction in the record, but we don't know how high up he is or was. But it is that, like, no matter whether or not it's true, he's going to behave like it's true and be treated like that. And that does add that extra dimension that because I think the IJ said it rested on his past accounts, when it's really how his behavior is going to cause other people to react, that's not a sufficient analysis. Thank you. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: GRABER, FRIEDLAND, and MILLER